**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Philips North America LLC, a Delaware Company, Koninklijke Philips N.V., a Company of the Netherlands, and Philips India Ltd., an Indian Company | Case No.: |
| Plaintiffs, | JURY TRIAL DEMANDED |
| vs. | |
| Global Medical Imaging, LLC d/b/a Avante Ultrasound, Avante Health Solutions f/k/a Jordan Health Products, LLC, and Jordan Industries International, LLC., | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Philips North America LLC ("Philips USA"), Koninklijke Philips N.V. ("Philips N.V."), and Philips India Ltd. ("Philips India") (hereinafter, collectively the "Plaintiffs" or "Philips"), by and through their undersigned counsel, hereby bring the following Complaint against Global Medical Imaging, LLC d/b/a Avante Ultrasound ("GMI"), Avante Health Solutions f/k/a Jordan Health Products, LLC ("Avante"), and Jordan Industries International, LLC ("Jordan Industries") (collectively, "Defendants"), and now plead as follows:

**OVERVIEW**

1. Philips is a well-known leader in the business of developing, manufacturing, selling, supporting, maintaining, and servicing medical imaging systems used at hospitals and medical centers. Philips' systems include Philips' proprietary hardware and software, which are necessary to operate, service, and repair Philips' systems. Philips' proprietary software enables certain

functions on the ultrasound systems, which can only be modified by Philips, and the software enables Philips to control, update and track its ultrasound systems in the marketplace. Philips' customers pay for enabled features and additional options.

2.  Philips' high quality products and proprietary software has made Philips a trusted producer, manufacturer, and supplier of medical imaging systems worldwide, and in the course of Philips' business, Philips has garnered substantial goodwill and has advertised and marketed worldwide the Philips' goods and services under the Philips name and trademarks.

3.  Defendant Avante advertises itself and its "family of companies" as "a single source provider of medical, surgical, diagnostic imaging, and radiation oncology equipment, including sales, service, repair, parts, refurbishing, and installation."[1] GMI (with Ultra Solutions) is the ultrasound arm of Avante that does business under the name Avante Ultrasound and is advertised on the Avante website as the "one source for complete ultrasound service, parts and equipment."

4.  In furtherance of Avante's publicly advertised goal to be a "single source provider" of imaging equipment sales, service, repair, parts, refurbishing, and installation, Avante, GMI and Jordan Industries agreed to carry out and engage in a fraudulent and intentional scheme to trade off of Philips' reputation and goodwill and to steal Philips' proprietary software and to tortiously interfere with Philips contractual relations in order to make a profit. Defendants use hacking tools, including on information and belief a counterfeit key generator, to illegally and without Philips' consent hack Philips' proprietary software to modify, tamper with and alter Philips ultrasound systems to enable unlicensed software features and to sell the modified Philips ultrasound systems with the unlicensed features for a profit and to service and repair Philips ultrasound systems.

---

[1] https://avantehs.com/about (last accessed July 6, 2021)

5.    Defendants further profit from their brazen scheme and cause their customers to participate in and carry out their scheme through the sale of "24-hour access keys".  The access keys are sold for a profit and are provided for the purpose of opening up a Philips ultrasound system to, on information and belief, enable unlicensed and unauthorized options and to access proprietary diagnostic and service tools that are reserved exclusively for Philips engineers and authorized personnel for use in Avante and GMI's parts sale, repair and service business.

6.    Philips brings this action against Defendants to stop to their illegal scheme and unfair competition. In addition to recovering damages caused by Defendants' copyright infringement, false representations, counterfeit products, and unlawful hacking of Philips systems, Philips seeks a permanent injunction prohibiting Defendants from using Philips' goodwill or proprietary material; from misappropriating Philips' intellectual property; from interfering with Philips contracts; and an order requiring an accounting and return of all Philips' proprietary material in Defendants' possession, shared by Defendants or obtained by Defendants through Defendants' unlawful acts, including an identification of all persons or entities such information has been obtained from or shared with.

**THE PARTIES**

7.    Plaintiff Philips North America LLC is a Delaware limited liability company, formerly known and doing business as Philips North America Corporation (a Delaware Corporation), with a principal place of business in Andover, Massachusetts. Philips USA's business includes, among other things, developing, manufacturing, selling, supporting, maintaining, and servicing Philips' medical imaging systems. Philips USA is co-owner of registered copyrights identified in Exhibit A attached hereto and described more fully in Paragraph 30.

8. Plaintiff Koninklijke Philips N.V. is a public limited liability company organized and existing under the laws of the Netherlands, with a principal place of business at High Tech Campus 5, Eindhoven Netherlands 5656 AE. Philips NV is the sole owner of numerous Philips' subsidiaries, including Plaintiff Philips North America LLC.

9. Plaintiff Philips India Ltd., formerly known and doing business as Philips Electronics India Ltd., is a limited company organized and existing under the laws of India, with a principal place of business in Bangalore, India. Philips India is owner or co-owner of registered copyrights identified in Exhibit A attached hereto and described more fully in Paragraph 30.

10. Based upon publicly available information and belief, Defendant Jordan Industries International, LLC is a Delaware LLC that regularly conducts business in this district and has its principle place of business at 875 N. Michigan Avenue, Suite 4020, Chicago, IL 60611. On information and belief, Jordan has the right and ability to supervise the conduct described herein, is the ultimate financial beneficiary of the wrongful conduct alleged herein, and knowingly and voluntarily agreed to GMI and Avante's improper conduct described here to secure a financial gain for itself.

11. Based upon publicly available information and belief, Avante Health Solutions f/k/a Jordan Health Products, LLC dba is a Delaware LLC that regularly conducts business in this district and has its principle place of business at 1751 Lake Cook Road, Suite 550, Deerfield, IL 60015. Based upon publicly available information, in June 2017, Jordan Health Products rebranded and changed its name to Avante Health Solutions to "establish[] a well-known brand based on the strength of [its] family of companies" and to "identify[] [its] companies with a common theme and message."[2]

---

2 https://gmi3.com/news-article/jordan-health-products-to-rebrand-as-avante-health-solutions

12. Based upon publicly available information and belief, Defendant Global Medical Imaging, LLC dba Avante Ultrasound is a Delaware LLC that regularly conducts business in this district and whose member Jordan Health Products I, has its principle place of business at 875 N. Michigan Avenue, Suite 4020, Chicago, IL 60611. Based upon publicly available information, Defendant Global Medical Imaging, LLC dba Avante Ultrasound was acquired by Defendant Jordan Industries, in October of 2015 as the first ultrasound platform acquisition and it now operates as Avante Ultrasound, a division of Avante Health Solutions. On information and belief, following the acquisition, Avante and Jordan Industries took over control and leadership of GMI and have been funding, overseeing, supervising and directing the business of GMI since it was acquired in October of 2015. On information and belief, following the acquisition, Avante and Jordan Industries knew of GMI's illegal methods, including its use of hacking tools and a counterfeit key generator, and agreed to participate in and fund the wrongful conduct for financial gain.

## JURISDICTION AND VENUE

13. This action is for circumventing a technological measure that effectively controls access to a protected work arising under the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. §§ 1201, 1202 *et seq.*, for Copyright Infringement arising under 17 U.S.C. § 100, *et seq.*, for trade secret misappropriation under 18 U.S.C. § 1836 *et seq.*, for violations of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, *et seq.*, for violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a), for tortious interference with contractual relations, civil conspiracy, and for unfair competition.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), 17 U.S.C. § 100 *et. seq.*, and 28 U.S.C. §1369 (supplemental jurisdiction) and the doctrines of ancillary and pendant jurisdiction.

15. This Court has personal jurisdiction over Jordan Industries, because Jordan Industries has its principal place of business located in this district. Moreover, Jordan Industries has transacted business in this district, and has committed infringement and tortious acts within the State of Illinois. On information and belief, Jordan Industries oversees, supervises, controls, directs and profits from the business of GMI and Avante described herein, and agreed to GMI and Avante's improper conduct, including tampering with Philips' proprietary software, the sale of 24-hour access keys, disassembling of Philips' medical device systems by circumvention of technological measures that control access to Philips' protected works and by use of misappropriated trade secrets belonging to Plaintiff, to secure a financial benefit for itself.

16. This Court has personal jurisdiction over Avante, because Avante has its principal place of business located in this district. Moreover, Avante has transacted business in this district and committed infringement and tortious acts within the State of Illinois by offering products and/or services. On information and belief, Avante's sales representatives target and/or solicit business from Illinois residents. On information and belief, Avante's business in this district includes tampering with Philips' proprietary software, the sale of 24 hour access keys, disassembling of Philips' medical device systems by circumvention of technological measures that control access to Philips' protected works and by use of misappropriated trade secrets belonging to Plaintiff.

17. This Court has personal jurisdiction over GMI because its member is located within this district, it has operations within this district and it has transacted business in this district and committed infringement and tortious acts within the State of Illinois by offering products and/or services. On information and belief, GMI represents itself to the public and to customers as "a Division of Avante Health Solutions", which located in this district and is managed and operated by personnel and officers located in this district. Moreover, GMI has transacted business in this

district and committed infringement and tortious acts within the State of Illinois by offering products and/or services. On information and belief, GMI targets and/or solicits business from Illinois residents. On information and belief, GMI's business in this district includes tampering with Philips' proprietary software, the sale of 24 hour access keys, disassembling of Philips' medical device systems by circumvention of technological measures that control access to Philips' protected works and by use of misappropriated trade secrets belonging to Plaintiff.

18. Venue is proper within the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in this district and the asserted claims arise from Defendants' conduct within this district, including the solicitation of business and the promotion of its products and/or services while making unauthorized and infringing use of Philips copyrights and trade secrets.

## BACKGROUND AND FACTS RELATED TO THIS ACTION

### ~Background Related to Philips~

19. Philips is well-known in the healthcare industry as a trusted provider of electronic medical imaging devices for use in healthcare facilities by healthcare providers.

20. Philips is among the premier medical imaging device companies in the United States and supplies healthcare providers throughout the United States with medical devices. Philips provides a variety of high quality products that include, but are not limited to, imaging devices such as ultrasound systems, computed tomography (CT) scanners, positron emission tomography (PET) scanners, X-ray machines, magnetic resonance (MR) scanners, and nuclear medicine scanners.

21. Philips develops, manufactures, sells, and subsequently supports, maintains, repairs and services these medical imaging systems through proprietary hardware, software, and trade secrets contained within the proprietary software and hardware.

22. In addition to the specific products and services that Philips offers, the Philips name has also become commonly known as the provider of specific branded lines of medical imaging devices, including without limitation, high-end and premium ultrasound imaging devices under the "CX," "HD," "ClearVue," "Sparq," "VISIQ," "Xperius," "iU," "iE," "Affiniti," "EPIQ", and other Philips ultrasound brand names (collectively, Philips ultrasound systems).

23. In addition to these brands, Philips sells refurbished models of these branded products as part of its Diamond Select program. Philips has been selling refurbished ultrasound systems under the Diamond Select brand name since as early as 2004. Philips authorizes certain third parties in certain territories to distribute Philips ultrasound systems, including Philips' refurbished machines under the Diamond Select brand name.

24. In addition to Philips ultrasound systems, Philips is also commonly known as a provider of specific branded lines of x-ray machines known as the "Integris," "FD Xpers," "Selaron," "Allura," and "FD Allura" models; of CT and/or PET scanners known as the "Brilliance," "Ingenuity," "IQon," "iCT," "Big Bore," and "MX16" models; of a series of magnetic resonance (MR) scanners known as the "Ingenia" models; and of a series of nuclear medicine and/or other scanners known as the "BrightView" models.

### ~Philips Owns Registered Copyrights for its Software And Has Implemented Strict Access Controls In The Ultrasound Systems~

25. Philips ultrasound systems are complex pieces of medical equipment that rely heavily on copyright protected, proprietary software and trade secrets that accompany each system.

26. That software was developed by and is owned by Philips entities and is protected by the Registered Copyrights set forth in Exhibit A attached hereto, and described more fully in Paragraph 30 below.

27. The specific versions and functionalities of the ultrasound systems enabled on a particular system can vary, and Philips licenses the use of features on each specific system. Because the proprietary software enabled on the ultrasound systems allows them to function, and controls what licensable features are available for copying into memory to be available for use, the proprietary software includes strict access controls to limit access to software features. These access controls also control access to optional software which enables certain system features and which Philips licenses to end users for a fee.

28. Philips and/or its affiliates have available a Shared Service Package, which gives the licensee access to a broader group of features for a single price. However, the Shared Service Package does not include all available options and does not give the Shared Service Package licensee unfettered access to all of Philips' proprietary software.

29. The Ultrasound Systems that Philips currently sells or that are active in the field are driven by one of three software platforms: (1) Philips Boris Platform; (2) Philips Voyager Platform and (3) Philips Common Platform software. Each of these platforms was created by, and is owned by, Philips and includes Philips' confidential and proprietary information, intellectual property and trade secrets.

30. Philips has also registered the copyright in the Philips' proprietary software for the following ultrasound systems: EPIQ5, EPIQ7, Affinity 30, Affinity, 50, Affinity 70, which models execute software subject to copyright registrations covering Voyager Platform Versions 1.5, 1.7, 1.8, 2.0, 3.0, 4.0.2, 5.0.1; CX50 Versions 1.0, 5.0; CX30 Versions 1.0, 2.0; ClearVue 350 Versions 2.0, 3.2; ClearVue 550 2.0, 3.2; ClearVue 580 Version 2.0; ClearVue 650 Versions 1.0, 3.2; ClearVue 850 Versions 3.1, 3.2; HD15 Versions 1.0, 3.0; SPARQ Versions 1.0, 3.0; VISIQ Version 1.0; XPERIUS Versions 1.1, 2.0; HD11 Versions 1.0, 1.2; STS; CRC Tool 2014; CRC

Tool 2018; registrations for each of the foregoing software titles and versions are attached hereto as Exhibit A (together with derivatives thereof, and earlier versions thereof, the "Ultrasound Software"), and are fully incorporated into this Complaint as if set forth in full herein.

31. Each ultrasound system, whether driven by Boris Platform software, Voyager Platform software or Common Platform software, includes both model specific features and machine specific set features that Philips enables on each ultrasound system pursuant to the license that the end user purchases. An ultrasound system may also support optional hardware add-ons and features, which Philips can enable if the end user purchases an additional license.

32. Philips uses multiple layers of technological controls to protect Philips' copyright-protected works from unauthorized access. These controls include user specific access codes and hardware-keys, which enable the software access and control features for a particular registered user. These user specific access controls permit access to enabled Philips tools and features based on a user's registered access authorization level. These controls also include machine specific access controls which permit users access only to the features and tools that have been enabled on a specific device. Philips further protects its trade secrets and proprietary software with both contractual restrictions and access controls, which only allow individuals access to informational material consistent with the authorization level of their user credentials.

33. Each specific ultrasound system includes certain software and hardware features that may only be used when a particular licensable feature is enabled. For each Philips ultrasound system sold, only the licensed features and tools are enabled, and only the specific authorized users of the machine can access the enabled features and software options.

34. Philips' optional licensable features control access to Philips' proprietary software and limit the options available on each specific ultrasound system. Features and add-ons that have not

been licensed are not accessible on ultrasound system or by the authorized user. Any attempt to use an unlicensed feature on an ultrasound system will result in an error message that the feature is not compatible with the system and/or the machine specific access controls will prevent access to the unlicensed feature. If a specific hardware add-on requires a software feature be enabled to make use of such hardware, absent the required software, Philips ultrasound systems will report an incompatible device and the related software will be disabled.

35. For example, if a user attaches an ultrasound transducer to a Philips ultrasound system, but the related software is not enabled for that ultrasound system, the imaging functionality will be disabled and the user will receive an error message informing the user that the transducer is incompatible with that specific ultrasound system.

36. The systems also contains other software features, including trade secret features, which can only be accessed by individuals with the necessary authorization levels. These features include certain proprietary onboard service, calibration, and diagnostic features and tools.

37. Philips also controls access to proprietary manuals and documents with instructions for use of its proprietary software, which together with its proprietary software, Philips refers to as its customer service intellectual property ("Philips CSIP").

38. Displays on computer screens that appear in connection with accessing Philips' software on ultrasound systems, and the contents of written service and maintenance manuals used by technicians to access Philips ultrasound systems, contain various written warnings, disclosures, and notices that place the user on notice that the software and information being accessed is Philips' proprietary and confidential software that is to be accessed only by authorized and licensed users, and that passwords provided by Philips in connection with such access are, likewise, subject to terms and conditions restricting their usage.

39. Additionally, for protection of Philips' CSIP, Philips ensures that it retains—and does retain—ownership of its CSIP even though the physical machine upon which Philips CSIP resides may itself be owned by a hospital, medical center, or other Philips customer.

40. Philips has spent considerable time and money creating this software and developing access controls to limit and control access to these features in the manners described above. Philips meticulously controls who holds a license for specific restricted tools and features, what features and options are available and accessible on particular ultrasound system, and requires end users to register for authorized access. These same controls prevent unlicensed access to and copying of the software.

41. Unauthorized access to or changes to a Philips ultrasound system or its software puts Philips' proprietary software and trade secret information at serious risk, and harms Philips' ability to control access to its proprietary software and the use of its ultrasound system.

**~Defendants Are Using Counterfeit Access Keys and Other Tools to Modify Philips ultrasound systems For A Profit ~**

42. On information and belief, Jordan Industries developed and implemented a plan to secure a foothold in the healthcare market by establishing the Avante Family of Companies as the "single source provider of medical, surgical, diagnostic imaging, and radiation oncology equipment, including sales, service, repair, parts, refurbishing, and installation".[3] On information and belief, the profits of Jordan Industries are derived, at least in part, directly from the unlawful activities alleged herein and Jordan Industries agreed to the scheme described herein in order to make a profit and to establish Avante as a "single source" alternative to OEMs, including Philips.

---

[3] https://avantehs.com/about; see also https://gmi3.com/news-article/jordan-health-products-to-rebrand-as-avante-health-solutions (last accessed July 6, 2021)

43. On information and belief, to secure a profit for Jordan Industries and in furtherance of Avante's publically stated goal to be an "easier and more affordable" "single source provider" of all medical equipment, Jordan Industries, through Avante acquired GMI. Since that acquisition, GMI, at the direction of and for the financial benefit of Jordan Industries and Avante, acts under the dba Avante Ultrasound in furtherance of Defendants' unlawful scheme to trade off of and use Philips' proprietary and trade secret software, tools and information.

44. Avante publicly advertises Avante Ultrasound as the "one source for complete ultrasound service, parts and equipment" and "the reliable choice for customers seeking effective solutions to rising costs in the healthcare marketplace".[4] On information and belief, Avante and GMI each, jointly and as a single brand engage in the unlawful conduct described herein.

45. In furtherance of the scheme to establish Avante as the "one source" for all medical equipment needs, Defendants publically promote GMI as a division of Avante and they routinely conduct business and represent to the public and their customers that they are a single entity. On information and belief, Avante also directs, controls and supervises GMI employees and business, and shares employees and officers with GMI who routinely conduct business and communicate to GMI's customers, including communications related to the service, repair, purchase and sale Philips ultrasound systems and components.

46. Defendants' unlawful scheme consists of three independent and unlawful activities: (1) the modification of Philips ultrasound systems to enable software configurations and features without permission and the sale of modified ultrasound systems for a profit, *e.g.* the St. Peters Hospital system described below; (2) the sale of "24 hour access keys", to customers and third parties, intended for use by Defendants and their customers to circumvent and bypass Philips' security

---

[4] https://avantehs.com/ultrasound (last accessed July 6, 2021)

measures and access controls to gain access to unlicensed options and proprietary service and diagnostic tools within Philips ultrasound system software, and (3) the use, by Defendants and their customers, of "24 hour access keys" to circumvent and bypass Philips' security measures and access controls to force compatibility and interoperability between Philips medical imaging devices and related hardware devices and to support Defendants' ultrasound service and repair business.

47. *First*, Philips has recently discovered that Defendants are knowingly and intentionally causing the modification Philips ultrasound systems and selling modified systems in at least the U.S. without permission. Defendants' unauthorized sale of modified ultrasound systems provides customers unauthorized access to proprietary Philips' proprietary software and trade secret information. On information and belief, Philips alleges that GMI, Avante, and Jordan Industries are each profiting from this illegal scheme.

48. Defendants are not and never have been a licensed distributor of Philips ultrasound systems in the United States.

49. On information and belief, Philips alleges that to modify Philips ultrasound systems, Defendants hack into or cause, authorize and direct others to hack into systems by circumventing the access controls described above, including through the use of a counterfeit key generator and other modification tools, to gain access to and modify Philips' proprietary software. The modifications also include circumventing additional access controls within Philips' systems to permanently enable optional software tools and features that consumers could only otherwise access by purchasing licenses from Philips.

50. On information and belief, Defendants' scheme also includes modifications to, or causing, authorizing and directing others to modify, Philips ultrasound systems to permanently enable

combinations of optional features that consumers could never obtain from Philips, because Philips does not sell or support such combinations and configurations.

51. On information and belief, Defendants' scheme also includes modifications to, or causing, authorizing and directing others to modify, Philips ultrasound systems to enable software features that, at the time they were enabled, have not yet been approved for commercial and clinical use.

52. On information and belief, Jordan Industries has knowledge of and profits from all modifications made by GMI and Avante and they supervise, approve and authorize GMI and Avante's unauthorized modifications to Philips ultrasound system software in each of the manners described in Paragraphs 47-51 to make a profit.

53. *Second,* on information and belief, Defendants unlawfully developed, created, took and/or purchased a counterfeit key generator, which GMI and Avante advertises, markets and sells to its customers and other third parties for a profit. On information and belief, GMI and Avante advertise, market and sell "24 hour access keys" to customers and other third parties when it sells or provides a Philips ultrasound replacement part or component.

54. Philips recently discovered from a Philips Field Service Engineer ("FSE") who previously worked as a Biomed at a hospital that purchased parts from GMI that when hospitals purchase parts from GMI, GMI provides a 24-hour keys to use to repair the system. The FSE also witnessed GMI offer 24-hour keys for sale on a purchase order.

55. On information and belief, GMI, in concert with and for the benefit of Avante and Jordan Industries, has a similar arrangement with Biomeds at numerous other hospitals where Defendants sells parts, and has regularly provided 24-hour keys to at least 5 other hospitals to give Defendants and/or their customers unauthorized access to Philips proprietary information in order to force compatibility and interoperability of the replacement parts sold by GMI and Avante and/or to

enable unlicensed clinical options and features.

56. On information and belief, the 24 hour access key is also used by Defendants to provide Defendants' customers and third parties with the ability to circumvent Philips' access controls to permanently enable unlicensed software features on Philips ultrasound systems and to access proprietary tools and features.

57. On information and belief, Jordan Industries has knowledge of and profits from GMI's and Avante's advertising, marketing, use and sale of these 24 hour access keys and they fund, supervise, approve and authorize the continued advertising, marketing, use and sale of these 24 hour access keys to make a profit.

58. *Third*, on information and belief, Defendants use the counterfeit key generator and 24 hour access keys to support their ultrasound service and repair business.

59. Purchasers of Philips ultrasound systems—such as hospitals and health care providers throughout the United States—may obtain post-warranty maintenance and other servicing for the systems from Philips, or they may use independent, non-Philips companies for maintenance and servicing. GMI and Avante provide competing, non-Philips maintenance and servicing for Philips ultrasound systems. Defendants offers such services, at least in part, by improperly using Philips confidential and proprietary information, which they access by using the 24 hour access keys to circumvent Philips access controls and security measures.

60. On information and belief, GMI and Avante supply the "24 hour access keys" to customers with purchased replacement parts. GMI and Avante use, and/or cause their customers to use, the access keys to obtain access to and use Philips proprietary diagnostic and service tools, without paying for a license, to service, repair and test Philips ultrasound systems and to force compatibility and interoperability between Philips medical imaging devices and replacement parts.

61. On information and belief, GMI and Avante also use the "24 hour access keys" to access and use features proprietary features and tools that are reserved for Philips authorized personnel and which Philips does not license to third parties.

62. On information and belief, Jordan Industries has knowledge of the 24-hour access keys and use of the 24-hour access keys, and has conspired with Avante and GMI to use the 24-hour access keys to tortiously interfere with Philips Software License Agreement and Terms and Conditions of Sale (described further below) to cause owners of Philips ultrasounds to breach those Agreements in order for Defendants to make a profit by offering competing services.

63. Defendants do not and never have held a license to modify, or to authorize or direct others to make modifications to Philips ultrasound systems or the software that drives them, and they are not authorized to modify or to distribute modified Philips ultrasound systems. Defendants modify Philips ultrasound systems for commercial gain.

**~Defendants' Conduct at St. Peters Hospital and Beaumont Dearborn Hospital ~**

64. Philips alleges on information and belief that Defendants engaged in the above described conduct on at least two ultrasound systems discovered onsite by Philips FSEs. On information and belief Philips alleges that Defendants have engaged in and continue to engage in similar conduct at other hospitals throughout the country.

65. In or about March 2020, a Philips FSE onsite and performing routine service and maintenance discovered that St. Peters Hospital in Albany, New York had an Epiq ultrasound system with unlicensed software and clinical options.

66. On information and belief, St. Peters Hospital purchased the system from third party Soma Technology who purchased the system from Defendant GMI.

67. On information and belief, prior to selling the system to Soma Technology, GMI in concert with Avante and Jordan Industries, used a counterfeit key generator and other hacking tools to bypass Philips' security and access controls to enable additional clinical options, without paying for a license. On information and belief, GMI in concert with Avante and Jordan Industries modified the software on the Epiq ultrasound to enable additional clinical options, including the clinical option "Transducer Option VeriSight" that, at the time of discovery in or about March 2020, was not FDA-approved or available for license and use. Neither Defendants, nor their customers, were licensed by Philips to enable or use these options.

68. On information and belief, prior to selling the system to Soma Technology, GMI in concert with Avante and Jordan Industries, also used a counterfeit key generator and other hacking tools to upgrade the software on the system from version 1.7 to version 5. Defendants were not licensed by Philips to upgrade or use software version 5.0.

69. In or about December 2020, a Philips FSE was onsite at Beaumont Dearborn Hospital in Michigan in response to a service request. While onsite and servicing the system, the FSE was told by hospital personnel that Avante was onsite the prior day and had being playing with and deleted all of the DICOM presets.

70. The DICOM setting are used to store, exchange and transmit images from Philips ultrasound systems. On information and belief, Avante accessed and altered the DICOM presets using a counterfeit key generator and other hacking tools.

71. Defendants were not authorized by Philips to make changes to the software or options on the St. Peters Hospital or Beaumont Dearborn Hospital systems.

72. On information and belief, discovery will reveal that Defendants have engaged in similar unauthorized conduct at numerous hospitals throughout the country.

- 18 -

## Count I: Circumventing and Trafficking a Technological Measure – 17 U.S.C. § 1201
## (All Defendants)

73. Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count I.

74. Philips medical imaging systems include Philips' copyrighted and proprietary software, which also include Philips' trade secrets.

75. The clinical software and diagnostic and service tools software in Philips ultrasound systems are protected by copyright under Title 17, and include without limitation Philips service tools for updating or modifying the licensed options available on a machine, and for modifying identification numbers associated with a machine.

76. The log file output and user displays of Philips ultrasound systems are also respectively protected by copyright under Title 17 as non-literal elements of Philips software installed on and executing on Philips ultrasound systems.

77. Philips ultrasound systems licensed optional software is also protected by copyright under Title 17.

78. Philips employs numerous access controls to protect and control access to and restrict use of its copyrighted proprietary software and/or portions thereof.

79. Philips' access controls include technological measures to protect and control access to and limit use of their copyrighted proprietary software and/or portions thereof.

80. On information and belief, Avante oversaw and directly participated in GMI's acts of circumvention of access controls to gain access to copyrighted material that includes Philips' trade secrets and sale of 24-hour keys.

81. GMI and Avante knowingly and intentionally circumvent Philips' access controls, using either GMI and Avante's counterfeit key generator to create "access codes", or other unlawful means, or a combination of the key generator with such other means. GMI and Avante hack Philips' access controls to gain access to Philips' medical imaging system onboard tools for updating, modifying, or adding Philips software options—tools that only Philips authorized personnel are able to access using either Philips generated key codes or Philips authorized access control dongles to comply with Philips access controls.

82. GMI and Avante have hacked and continue to intentionally hack one or more of Philips' technological measures to knowingly and intentionally circumvent these access controls to gain unauthorized access to Philips' protected software works, which include Philips trade secrets, and to enable features of these software works which Philips has not licensed or authorized GMI, Avante, or their customers, to make use of. Through these unlawful means, GMI and Avante unlawfully gain access to unlicensed Philips software and provide such unauthorized access to all subsequent users of Philips' machines hacked by GMI and Avante.

83. GMI and Avante, furthermore, have hacked and continue to knowingly and intentionally hack one or more of Philips' technological measures to circumvent these access controls to gain unauthorized access to a variety of copyrighted works. GMI and Avante do this to circumvent Philips controls that limit access to Philips' copyright protected software works to enable optional features of these software works which Philips has not licensed or authorized GMI, Avante, or its customers, to make use of. Philips has the right to employ technological measures to protect, and control access to, Philips copyright protected works within Philips ultrasound systems, the operating system within which Philips copyright protected works are executed, and the files stored within the operating systems' file structure.

84. On information and belief, GMI and Avante knowingly and intentionally employ these hacked machines providing unlicensed access to Philips copyright protected software and files to Defendants' employees to provide a parts repair and service business, and GMI and Avante hack the Philips machines owned by their customers in furtherance of both their parts repair business and their service contract business.

85. On information and belief, GMI and Avante further provide training to theirs customers that include instructions about how to circumvent Philips' access controls with GMI and Avante's hacking tools and techniques.

86. In addition, or in the alternative, Avante oversees, markets and advertises GMI's services and has the right and ability to supervise GMI's actions described herein, including the use of a counterfeit key generator and access keys, and On information and belief one or more other hacking tools, to circumvent Philips access controls that are technological measures that effectively control access to works protected under Title 17, including Philips proprietary software. On information and belief, Avante benefits financially from GMI's activities. Because Avante had the right and ability to supervise the circumvention actions of GMI, and because Avante benefitted financially from GMI's circumvention actions, Avante is vicariously liable for GMI's's violations of 17 U.S.C. §§ 1201 and 1202 as set forth in this Complaint.

87. On information and belief, at all relevant times Jordan Industries has, has had, and continues to have an obvious and direct financial interest in GMI and Avante's circumvention methods and tools.

88. On information and belief, at all relevant times Jordan Industries has, has had, and continues to have the right and ability to supervise the work of GMI and/or Avante's employees.

89. Because Jordan Industries had the right and ability to supervise the circumvention actions of GMI and Avante, and because Jordan Industries benefitted financially from GMI and Avante's circumvention actions, Jordan Industries is vicariously liable for GMI and Avante's violations of 17 U.S.C. §§ 1201 and 1202 as set forth in this Complaint.

90. Defendants' intentional and knowing circumvention of the technological measures Philips uses to effectively control access to a work or works protected under Title 17, in violation of 17 U.S.C. § 1201(a)(1) of the Digital Millennium Copyright Act.

91. Defendants' techniques, including their counterfeit key generator to create "access codes", are, or at least include, devices, products, components, or parts thereof that are primarily designed or produced for the purpose of circumventing Philips' access controls that protect Philips software to provide Defendants and Defendants' customers constant access to Philips' proprietary software. Thus, Defendants are in the business of knowingly marketing, manufacturing, offering to the public, and/or trafficking in a product, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing Philips' access controls that protect and control access to Philips software.

92. On information and belief, to carry out Defendants' unlawful circumvention of Philips' access controls, Defendants make use of tools, including Defendants' counterfeit key generator, which have no use but to circumvent access controls.

93. Defendants have intentionally and/or knowingly manufactured, offered to the public, or otherwise trafficked in 24-hour access keys which constitute technologies, products, services, devices, components, or parts thereof, that are primarily designed or produced for the purpose of circumventing protection afforded by Philips' access controls and/or which have limited

commercially significant purpose other than to circumvent Philips' access controls in violation of the DMCA, 17 U.S.C. § 1201(a)(2).

94. Philips has been and will continue to be damaged by the conduct of Defendants conduct in an amount not presently known with certainty, but that will be proven at trial.

95. Philips is entitled to the range of relief provided by 17 U.S.C. § 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, and Philips' costs and attorneys' fees in amounts to be proven at trial. Defendants' conduct has also caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

## Count II: Modifying Copyright Management Information – 17 U.S.C. § 1202

### (All Defendants)

96. Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count II.

97. Philips proprietary software is protected by copyright laws, and Philips owns the copyright in its protected software.

98. When a Philips ultrasound system boots up, a Philips access control allows the system to load only the licensed optional software based on machine specific configurations accessed by Philips access controls. This automated system allows Philips to exclude unlicensed use of optional software and thus automatically enforces the terms and conditions under which Philips makes its software available on a Philips ultrasound system.

99. Philips' machine specific configuration files for controlling access only to licensed optional software include copyright management information under 17 U.S.C. 1202(c).

100.     On information and belief, Avante oversaw and directly participated in GMI's acts of circumvention of access controls to gain access to and modify copyright management information.

101.     GMI and Avante's business of modifying Philips ultrasound systems includes modifications to such copyright management information and is intended to allow users to make unauthorized access to unlicensed portions of Philips' protected software.

102.     On information and belief, Philips alleges that GMI and Avante's sale of modified ultrasound systems includes providing or distributing modified machine specific configurations. GMI and Avante's business of selling Philips ultrasound systems with modified copyright management information is done intentionally and for the purpose of distributing falsified copyright management information knowing that the copyright management information has been altered. And GMI and Avante know, have reasonable grounds to know, or intend that their behavior facilitates, enables, or induces their customers to infringe Philips rights under Title 17.

103.     GMI and Avante modify copyright management information when they enable optional features of Philips ultrasound software within a particular ultrasound system, GMI and Avante intentionally alter the terms and conditions upon which Philips has licensed the use of Philips software stored within that particular ultrasound system. These terms and conditions for use of Philips optional copyright protected software works are copyright management information under § 1202(c)(6). Also, when GMI and Avante install software upgrades, they intentionally alter identifying numbers that refer to copyright management information, and thus are also copyright management information under § 1202(c)(7).  These terms and conditions and the identifying numbers are stored within a specific file, referred to herein as a "licensed options file." These terms and conditions are tracked within Philips data systems and are determined when a Philips customer

purchases a new system or when a Philips customer purchases an upgrade for a previously purchased system. In either case, Philips generates a licensed options file based on the customer's specific purchase as it is tracked within Philips data systems.

104. GMI and Avante intentionally alter these classes of copyright management information knowing, or having reasonable grounds to know, that it induces and enables and facilitates infringement of Philips' rights under Title 17. When GMI and Avante alter this copyright management information, the copyright management information is falsified as it no longer matches the configuration of that machine as it is defined within Philips data systems that Philips uses to, among other things, maintain a record of how Philips has licensed its software. GMI and Avante do this surreptitiously, using counterfeit access keys, to conceal, from both customers and Philips, the infringement GMI and Avante induce, enable and facilitate.

105. These classes of CMI stored within a Philips licensed options file within a particular Philips ultrasound system are distributed as electronically stored information within the Philips ultrasound system. In other words, the CMI runs with the specific Philips ultrasound system for which it was created as electronically stored information. This CMI functions within such a Philips ultrasound system as part of Philips' automated rights management software, and serves as a key component of access control software within a Philips system, as explained further below. In the normal course of intended operation of a Philips ultrasound system, the Philips licensed options file itself is protected by Philips user-based access controls and is not accessible to a user without Philips Field Service Engineer level access credentials.

106. GMI and Avante knowingly modify and falsify CMI on Philips ultrasound systems.

107. The licensed options file for a Philips ultrasound system includes a variety of copyright management information under 17 U.S.C. § 1202(c) stored in a specific form according

to a specific syntax, which Philips protects as trade secrets. A licensed options file also includes among other things a Philips copyright notice:

COPYRIGHT KONINKLIJKE PHILIPS ELECTRONICS N.V. 2013
All rights are reserved. Reproduction in whole or in part is prohibited without the written consent of the copyright owner.

108. A licensed options file also includes system identifying information, including the system's unique serial number, which is also physically stamped on an identification plate on the housing of the corresponding ultrasound system, and the system model, and an identification of the Philips system software and version.

109. A licensed options file also includes an explicit list of "Licensed Clinical Option[s]" as well as lists of other types of licensed options. For each such option, the licensed option file also includes an explicit statement of whether the software corresponding to such option is enabled or disabled, *i.e*., licensed from Philips or not licensed, by Philips for the specifically identified machine identified in the licensed options file. Such an explicit statement identifies the specific optional software feature by a unique Philips part number together with a statement, in English, of whether each uniquely identified software option is licensed for use on the specifically identified Philips system and a statement the term or duration of such license.

110. Thus, a licensed option file includes identifying numbers (unique part numbers) that refer to each licensable option available in the Philips' software residing on a Philips ultrasound system. The licensed option file also includes identifying numbers that correspond to the specific software and version number of the Philips software installed within a specific Philips system identified by serial number. These identifying numbers are explicit references to Philips software and specific optional software that customers may purchase with a system or as a later upgrade for the ultrasound system identified by serial number. These identifying numbers are also

copyright management information.

111.     A licensed options file also includes, in each listing of each such optional software and the system software, a plain English description of the corresponding software and an indication of whether each such optional software is licensed for use on the specific ultrasound system and for how long.  The information in the licensed options file sets forth the terms and conditions for use of the copyrighted work installed on the specifically identified ultrasound system, and therefore is copyright management information.

112.     When GMI and Avante force compatibility with a part or otherwise enable licensed options, Defendants alter the terms and conditions statements by at least changing an unlicensed option statement to a licensed option statement for the specifically identified software within the particular ultrasound system identified by the serial number stored within the licensed option file, thereby falsifying the terms and conditions from those created by Philips for the software within that machine.

113.     These licensed options statements are automatically enforced by Philips' software within a Philips system. That software controls whether optionally licensed software may execute within the ultrasound system bearing the serial number identified in the licensed options file. Thus, a Philips licensed options file is part of an automated rights management system that allows access to only those specifically identified features that Philips has licensed for use on that specifically identified system pursuant to an authorized license of such software from Philips. Thus, Philips licensed options files both include copyright management information and also operates as part of a technological measure that effectively controls access to Philips software within a Philips imaging system (and these measures are circumvented when the falsified copyright management is read by Philips automated rights management system).

114.     GMI and Avante do this for the purpose of enabling and thereby creating unlicensed copies of Philips software, and thus for the purpose of furthering copyright infringement, by either GMI and/or Avante or by their customers.

115.     Philips licensed options files also include identifying numbers that refer to copyright management information.  As explained above, in addition to part numbers identifying each individual licensable feature, a licensed options file includes a part number that uniquely identifies the software name and version number of the Philips ultrasound software platform (*e.g.*, CX-50 version 2.0) installed within the ultrasound system bearing the serial number identified in the licensed options file. If the software version that is installed within a Philips ultrasound system changes, the licensed options file is updated to reflect that change with a different uniquely identifying software version part number.

116.     On information and belief, when GMI and Avante perform an unlicensed software upgrade, they alter the identifying numbers, *e.g.*, the part number, that refers to the specific work licensed for installation on that particular ultrasound system, identified by serial number, among other information, in violation of § 1202(b)(1). If GMI and Avante perform an unlicensed software upgrade and do not alter the serial number accordingly, then the copyright management information provided and distributed with that ultrasound system is false in violation of § 1202(a)(1)-(2).

117.     GMI and Avante are not authorized by Philips to install software upgrades or to enable optional software features within a Philips ultrasound system for itself or on behalf of any other party, thus GMI and Avante alter Philips CMI and provide falsified CMI without Philips authority, *i.e.*, without the authority of the copyright owner.

118.     On information and belief, GMI and Avante's customers are unaware that GMI and

Avante have modified Philips' copyright management information, because GMI and Avante intentionally conceal this behavior from customers.

119.    GMI and Avante do this, on information and belief, using their counterfeit key generator which is configured by GMI and Avante to create access keys which, among other things, modify terms and conditions and/or identifying part numbers (depending on the particular service) stored in a licensed options file, which as explained above, is itself part of Philips automated copyright management system within Philips ultrasound system.  GMI and Avante do this to circumvent Philips automated rights management software to gain access to Philips' copyright protected software stored within Philips ultrasound systems, and thus conceal copyright infringement that is furthered by GMI and Avante's modifications.

120.    Such modified licensed options files are stored within the specific Philips ultrasound system for which it is created or modified, and is therefore distributed by GMI and Avante to GMI and Avante's customers within the Philips ultrasound system in which GMI and Avante modify the options file to provide false CMI.

121.    On information and belief, GMI and Avante's servicing of ultrasound systems includes providing or distributing modified Philips licensed options files with false CMI, including false terms and conditions, to create unlicensed copies of Philips' software.

122.    GMI and Avante's business of modifying copyright management information is done intentionally and for the purpose of distributing falsified copyright management information knowing that the copyright management information has been altered, including to enable unlicensed software or to force compatibility between a system and an accessory.  GMI and Avante know, have reasonable grounds to know, or intend that their behavior facilitates, enables, or induces their customers to infringe Philips rights under Title 17, because GMI and Avante use a

counterfeit key generator to create access keys for purpose of providing unlicensed access to Philips software and to Philips log file information.

123.     Philips has not authorized GMI or Avante to modify or provide such falsified copyright management information, nor has Philips authorized the modification of any copyright management information or the unlicensed use of Philips' proprietary optional software.

124.     GMI and Avante knowingly and with the intent to induce, enable, facilitate, or conceal infringement by their customers provide, and have provided, falsified copyright management information and/or distributing falsified copyright management information in violation of 17 U.S.C. § 1202(a). GMI and Avante carry out their alteration of CMI within Philips' licensed options files for the purpose of enabling unlicensed software options to force compatibility with transducers and to enable unlicensed options, and does so to provide such unlicensed access to Philips software for both itself and its customers.

125.     GMI and Avante's intentional alteration of Philips' copyright management information and subsequent distribution of modified licensed options files for accessing unlicensed portions of Philips' proprietary software is done with the knowledge that such behavior induces, enables, facilitates, or conceals infringement of Philips' copyright in its proprietary software in violation of 17 U.S.C. § 1202(b). GMI and Avante provide altered falsified CMI to their customers by deploying the falsified CMI within customer's medical imaging systems when GMI and Avante perform services by forcing compatibility or enable unlicensed optional software. GMI and Avante do this so that their customers can, likely unwittingly, use unlicensed Philips' software to enable the medical imaging system to operate the GMI and Avante-installed components or GMI and Avante enabled options.  When customers then use the components or options GMI and Avante enabled by modifying the terms and conditions and identifying information in the options file, the

customers, knowingly or unknowingly, create unlicensed copies of Philips' software, thus infringing Philips' copyrights. GMI and Avante thus knowingly modifies terms and conditions and identifying information in the options file to induce its customers to infringe Philips' copyrights.

126.     In addition, or in the alternative, Avante oversees, markets and advertises GMI's services and has the right and ability to supervise GMI's actions described herein, including the use of a counterfeit key generator and access keys, and On information and belief one or more other hacking tools, to circumvent Philips access controls that are technological measures that effectively control access to works protected under Title 17, including Philips proprietary software. On information and belief, Avante benefits financially from GMI's activities. Because Avante had the right and ability to supervise the circumvention actions of GMI, and because Avante benefitted financially from GMI's circumvention actions, Avante is vicariously liable for GMI's's violations of 17 U.S.C. §§ 1201 and 1202 as set forth in this Complaint.

127.     On information and belief, at all relevant times Jordan Industries has, has had, and continues to have an obvious and direct financial interest in GMI and Avante's circumvention methods and tools.

128.     On information and belief, at all relevant times Jordan Industries has, has had, and continues to have the right and ability to supervise the work of GMI and/or Avante's employees.

129.     Because Jordan Industries had the right and ability to supervise the circumvention actions of GMI and Avante, and because Jordan Industries benefitted financially from GMI and Avante's circumvention actions, Jordan Industries is vicariously liable for GMI and Avante's violations of 17 U.S.C. §§ 1201 and 1202 as set forth in this Complaint.

130.     Philips has been and will continue to be damaged by the conduct of Defendants in

an amount not presently known with certainty, but that will be proven at trial.

131.     Philips is entitled to the range of relief provided by 17 U.S.C. 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, and Philips' costs and attorneys' fees in amounts to be proven at trial.  Defendants' conduct has also caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

### Count III: Trade Secret Misappropriation – 18 U.S.C. § 1836

### (Avante and GMI)

132.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count III.

133.     Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above and below, in Philips' proprietary software for the Philips ultrasound systems.

134.     Philips' confidential, proprietary, and trade secret information relates to products used in, or intended for use in, interstate or foreign commerce.

135.     Philips' proprietary software and access control systems, including onboard software, contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.  Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access credential management, access control measures, machine specific access control files, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written

notices and warnings.

136.     Philips has expended significant money and effort in developing Philips' proprietary software, the trade secrets embodied therein, and the access control systems that protect such software and trade secrets, and that software and the information therein would be difficult to properly acquire or duplicate by Defendants or other competitors of Philips.

137.     Philips' proprietary software and access control systems derive independent economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.  Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer by virtue of the pricing related thereto.

138.     On information and belief, GMI and Avante have obtained Philips internal trade secret software tools for enabling optional software on Philips ultrasound systems; these tools are restricted within Philips even as to Philips own engineers and developers, and have never been distributed outside of Philips.

139.     On information and belief, GMI and Avante possess and are making use of Philips' trade secret tools for managing its access controls and GMI and Avante obtained these tools for enabling software options by improper means, or from someone having an obligation to maintain the secrecy of these tools in violation of the obligation.

140.     Philips optionally enabled software which implements and enables licensable features and tools comprises Philips trade secrets, which Philips only authorizes execution of within specific licensed machines. These trade secrets reside on Philips ultrasound systems in

compiled machine readable encoding, in a form which protects the nature and character and specific details of Philips trade secrets. These trade secrets are only accessible by a machine having an appropriate licensed option enabled by Philips' access controls. During execution a user or observer is unable to observe the nature, character, or details of the trade secrets embodied in the software that enables the machines functionality.

141.    GMI and Avante unlawfully access and enable access to Philips' trade secrets to sell modified ultrasound systems for a profit and/or for the purpose of furthering their parts repair business or its repair and maintenance service business in all cases for a profit.

142.    GMI and Avante have misappropriated some or all of these trade secrets for their own unlawful use and/or benefit without express or implied consent by Philips.  At the time of their use of such trade secrets, GMI and Avante knew or had reason to know that their knowledge of the trade secrets was acquired either under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret, or by improper means.

143.    GMI and Avante's actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

144.    As a result of GMI and Avante's misappropriation of these trade secrets, GMI and Avante have profited and Philips has suffered damages in an amount to be proven at trial. At a minimum, GMI and Avante have gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

145.    GMI and Avante's ongoing and continuing use of the trade secrets and proprietary

and confidential information of Philips has caused, and will cause, Philips repeated and irreparable injury. Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by GMI and Avante.

146.     Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

147.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, GMI and Avante have violated the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836.

## Count IV: Trade Secret Misappropriation and Violations of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, *et seq.* (Avante and GMI)

148.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count IV.

149.     Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above and below, in Philips' proprietary software for the Philips ultrasound systems.

150.     Philips' confidential, proprietary, and trade secret information relates to products used in, or intended for use in, interstate or foreign commerce.

151.     Philips' proprietary software and access control systems, including onboard software, contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy. Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access credential management, access control measures, machine specific access control files, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or

technological safeguards and also including in the form of contractual protections and written notices and warnings.

152.     Philips has expended significant money and effort in developing Philips' proprietary software, the trade secrets embodied therein, and the access control systems that protect such software and trade secrets, and that software and the information therein would be difficult to properly acquire or duplicate by Defendants or other competitors of Philips.

153.     Philips' proprietary software and access control systems derive independent economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.  Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer by virtue of the pricing related thereto.

154.     On information and belief, GMI and Avante have obtained Philips internal trade secret software tools for enabling optional software on Philips ultrasound systems; these tools are restricted within Philips even as to Philips own engineers and developers, and have never been distributed outside of Philips.

155.     On information and belief, GMI and Avante possess and are making use of Philips' trade secret tools for managing its access controls and GMI and Avante obtained these tools for enabling software options by improper means, or from someone having an obligation to maintain the secrecy of these tools in violation of the obligation.

156.     Philips optionally enabled software which implements and enables licensable features and tools comprises Philips trade secrets, which Philips only authorizes execution of

within specific licensed machines. These trade secrets reside on Philips ultrasound systems in compiled machine readable encoding, in a form which protects the nature and character and specific details of Philips trade secrets. These trade secrets are only accessible by a machine having an appropriate licensed option enabled by Philips' access controls. During execution a user or observer is unable to observe the nature, character, or details of the trade secrets embodied in the software that enables the machines functionality.

157.     GMI and Avante unlawfully access and enable access to Philips' trade secrets to sell modified ultrasound systems for a profit and/or for the purpose of furthering its parts repair business or its repair and maintenance service business in all cases for a profit.

158.     GMI and Avante have misappropriated some or all of these trade secrets for their own unlawful use and/or benefit without express or implied consent by Philips.  At the time of their use of such trade secrets, GMI and Avante knew or had reason to know that their knowledge of the trade secrets was acquired either under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret, or by improper means.

159.     GMI and Avante's actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

160.     As a result of GMI and Avante's misappropriation of these trade secrets, GMI and Avante have profited and Philips has suffered damages in an amount to be proven at trial. At a minimum, GMI and Avante have gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

161.    GMI and Avante's ongoing and continuing use of the trade secrets and proprietary and confidential information of Philips has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.

162.    Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

163.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, GMI and Avante have unlawfully misappropriated Philips' trade secrets and violated the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, *et seq.*

### Count V: Violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)
### (Avante and GMI)

164.    Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count V.

165.    Philips ultrasound systems are computer systems that are connected through hospital networks to the Internet and affect interstate commerce.

166.    GMI and Avante have and continue to intentionally and/or knowingly access the software on the computers within Philips ultrasound systems on the ultrasound systems at St. Peters, Beaumont Dearborn, and other locations either without authorization, or in excess of the access granted, or in excess of access that the ultrasound systems' owners had the rights and ability to confer upon GMI and Avante.

167.    GMI and Avante have thereby accessed and obtained information from Philips ultrasound systems that have violated the CFAA.

168.     While the Philips ultrasound systems at-issue are, in most cases, owned by hospitals that are not parties to this action, Philips has reserved and retained its rights to the proprietary software and Philips CSIP contained on Philips ultrasound systems.

169.     GMI and Avante have knowingly modified and thereby circumvented the access controls on Philips ultrasound systems to gain unauthorized access to Philips' proprietary software to enable unlicensed options and to provide maintenance or other services.  On information and belief, GMI and Avante hold themselves out as being authorized to enable unlicensed options and to provide maintenance or other services and received payment for those services. GMI and Avante thereby knowingly, and with intent to defraud, accessed a protected computer without authorization, and by means of that conduct furthers the intended fraud and obtained value

170.     GMI and Avante altered the software on Philips ultrasounds systems to bypass the access controls by knowingly causing the transmission of a program or command that compromised the integrity of the proprietary software by modifying or removing its access controls. As a result of GMI and Avante's conduct, GMI and Avante intentionally caused damage without authorization to a protected computer.

171.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, including the use of counterfeit "access keys" to circumvent Philips access controls, GMI and Avante have made and continue to make unauthorized use of computer passwords and other access methods that they were not authorized to use, in violation of § 1030(a)(6)(A).

172.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, including the use of counterfeit "access keys" to circumvent Philips access controls, GMI and Avante exceed their authorized levels of access to Philips ultrasound systems, Philips' proprietary software and Philips CSIP, in violation of § 1030(a)(6)(C).

173.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, including the use of counterfeit "access keys" to circumvent Philips access controls, GMI and Avante exceed their authorized levels of access Philips ultrasound systems, Philips' proprietary software and Philips CSIP, thereby obtaining valuable diagnostic and maintenance log files, and access to other valuable and proprietary tools and information, in violation of § 1030(a)(4).

174.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, including the use of counterfeit "access keys" to circumvent Philips access controls, GMI and Avante have caused Philips to incur losses in excess of $5,000.00 in value in a one-year period related to the investigation of and cost of responding to the conduct set forth in the preceding paragraphs of this Complaint, including the remediation efforts to investigate and to reset the unauthorized enabling of unlicensed features on each Philips ultrasound system modified by GMI and Avante in an amount to be determined following discovery, but which is in excess of $5,000.00.

175.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, GMI and Avante exceed their authorized levels of access to Philips ultrasound systems, Philips' proprietary software and Philips CSIP, thereby obtaining valuable diagnostic and maintenance log files, and access to other valuable and proprietary tools and information, and thereby causing damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets, in violation of § 1030(a)(5)(c), and that further include the threat of continuing and ongoing harms relating to the same.

### Count VI: Copyright Infringement – 17 U.S.C. §§ 101, 501 *et. seq.* <br> (All Defendants)

176.    Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count VI.

177.    Philips' proprietary software is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 100, *et seq*.

178.    The Philips entities named in Exhibit A have complied in all respects with the provisions of the Copyright Act, and have registered the copyright in the Philips' proprietary software for the following ultrasound systems: EPIQ5, EPIQ7, Affinity 30, Affinity, 50, Affinity 70, which models execute software subject to copyright registrations covering Voyager Platform Versions 1.5, 1.7, 1.8, 2.0, 3.0, 4.0.2, 5.0.1; CX50 Versions 1.0, 5.0; CX30 Versions 1.0, 2.0; ClearVue 350 Versions 2.0, 3.2; ClearVue 550 2.0, 3.2; ClearVue 580 Version 2.0; ClearVue 650 Versions 1.0, 3.2; ClearVue 850 Versions 3.1, 3.2; HD15 Versions 1.0, 3.0; SPARQ Versions 1.0, 3.0; VISIQ Version 1.0; XPERIUS Versions 1.1, 2.0; HD11 Versions 1.0, 1.2; STS; CRC Tool 2014; CRC Tool 2018; registrations for each of the foregoing software titles and versions are attached hereto as Exhibit A (together with derivatives thereof, and earlier versions thereof, the "Ultrasound Software"), and are fully incorporated into this Complaint as if set forth in full herein.

179.    The named Philips entities are the developers and owners of all rights, title, and interest in and to the copyrights in Philips' Ultrasound Software.

180.    The clinical software and diagnostic and service tools software that constitute the software within Philips ultrasound systems are protected by copyright under Title 17, and subject to one or more of the copyright registrations identified in Exhibit A, and include without limitation Philips service tools for updating or modifying the licensed options available on a machine, and for modifying identification numbers associated with a machine.

181.    The log file output and user displays of Philips ultrasound systems are also respectively protected by copyright under Title 17 as non-literal elements of Philips software that is subject to one or more of the copyright registrations identified in Exhibit A and is installed on

and executing on Philips ultrasound systems.

182.    Philips ultrasound system licensed optional software is also protected by copyright under Title 17 and subject to one or more of the copyright registrations identified in Exhibit A.

183.    On information and belief, Avante oversaw and directly participated in GMI's acts of copyright infringement described herein.

184.    GMI and Avante engaged in copyright infringement by, without authorization, creating copies of and distributing copies of Philips' Ultrasound Software to others and by modifying the configuration files and software files constituting Philips' Ultrasound Software residing on machines serviced by GMI and Avante and in support of their parts sales business and on the modified systems they sell.

185.    GMI and Avante have further engaged in copyright infringement by, without authorization, creating a copy of the configuration files and software files constituting Philips Ultrasound Software residing on machines serviced by GMI and Avante, and in support of their parts sales business, in the memory of machines serviced by GMI and Avante and the modified systems sold by GMI and Avante.

186.    GMI and Avante has further engaged in copyright infringement by, without authorization, creating a copy of Philips access control related software tools for creating counterfeit configuration files for Philips ultrasound systems.

187.    GMI and Avante has further engaged in copyright infringement by, without authorization, creating a copy of Philips access control related software tools in the memory of GMI and Avante's processing devices and/or GMI and Avante's customer's processing devices and/or Philips ultrasound systems by GMI and Avante's unauthorized use of Philips access control related software tools.

188.     GMI and Avante have further engaged in copyright infringement by, without authorization, creating a copy of the configuration files and software files constituting Philips Ultrasound Software in the memory of the Philips ultrasound systems by GMI and Avante's unauthorized use of the Ultrasound Software and derivatives thereof.

189.     GMI and Avante have further engaged in copyright infringement by, without authorization, creating copies of and distributing copies of Philips stand-alone service tools to perform services and/or to bypass Philips access controls.

190.     GMI and Avante have further engaged in copyright infringement by, without authorization, creating copies of Philips' stand-alone tools in the memory of GMI and Avante's processing devices and/or Defendants' customer processing devices and/or Philips ultrasound systems by GMI and Avante's unauthorized use of Philips stand-alone tools.

191.     GMI and Avante further engage in copyright infringement by copying, reproducing, distributing, displaying, using, and/or creating unauthorized derivative works of Philips proprietary copyright protected software without authorization.

192.     GMI and Avante's acts constitute direct and/or contributory infringement of Philips' copyrights, including at least infringement of the Philips' copyrights identified in Exhibit A and/or derivatives thereof and/or earlier versions thereof.

193.     These actions on GMI and Avante's part have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

194.     GMI and Avante's copyright infringement has caused Philips to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to, and copyright in, Philips' proprietary software and, further, has damaged Philips' business, reputation and goodwill, diverted its trade, and caused a loss of profits, all in amounts not yet ascertained.

195.     GMI and Avante's copyright infringement, and the threat of continuing infringement, has caused, and will continue to cause, Philips repeated and irreparable injury. It is, at present, difficult to ascertain the amount of damages that would afford Philips adequate relief at law for GMI and Avante's continuing acts. Philips' remedy at law is not, by itself, adequate to compensate it for the injuries already inflicted and further threatened by GMI and Avante.

196.     GMI and Avante intentionally and knowingly copy, distribute, display, and make derivative works of Philips copyright protected software in violation of 17 U.S.C. §§ 100, 501 et. seq. of the Copyright Act.

197.     On information and belief, at all relevant times Jordan Industries has, has had, and continues to have an obvious and direct financial interest in GMI and Avante's circumvention methods and tools.

198.     On information and belief, at all relevant times Jordan Industries has, has had, and continues to have the right and ability to supervise the work of GMI and/or Avante's employees.

199.     Because Jordan Industries had the right and ability to supervise the circumvention actions of GMI and Avante, and because Jordan Industries benefitted financially from GMI and Avante's circumvention actions, Jordan Industries is vicariously liable for GMI and Avante's violations of 17 U.S.C. §§ 100, 501 *et. seq.* as set forth in this Complaint.

200.     Philips has been and will continue to be damaged by the conduct of Defendants in an amount not presently known with certainty, but that will be proven at trial.

201.     Philips is entitled to the range of relief provided by 17 U.S.C. § 504, including but not limited to, injunctive relief, compensatory damages or statutory damages, and Philips' costs and attorneys' fees in amounts to be proven at trial. Defendants' conduct has also caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause further

irreparable and incalculable injury, for which Philips has no adequate remedy at law.

## Count VII: Tortious Interference With Contractual Relations
## (Avante and GMI)

202.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count VII.

203.     Philips customers enter into agreements with Philips when they purchase an ultrasound system.  The use of the proprietary software on a Philips ultrasound system is governed by Philips Standard Terms and Conditions of Sale and Philips Software License Agreement (collectively "the Agreements").

204.     Both of the Agreements contain the following terms related to the software and use of the software on Philips ultrasounds systems:[5]

///

///

///

---

[5] https://www.usa.philips.com/healthcare/about/terms-conditions (last accessed July 6, 2021).

**LICENSED SOFTWARE**

1. **License Grant**

   1.1 Subject to any usage limitations for the Licensed Software set forth on the product description of the quotation, Philips grants to Customer a nonexclusive and non-transferable right and license to use the computer software package (Licensed Software) in accordance with the terms of the quotation and these Terms and Conditions of Sale. The License shall continue for as long as Customer continues to own the product, except that Philips may terminate the License if Customer is in breach or default of these Terms and Conditions of Sale and/or the quotation. Customer shall return the Licensed Software and any authorized copies thereof to Philips immediately upon expiration or termination of this License.

   1.2 The License does not include any right to use the Licensed Software for purposes other than the operation of the product. Customer may make one copy of the Licensed Software in machine-readable form solely for backup purposes. Philips reserves the right to charge for backup copies created by Philips. Except as otherwise provided under Section 1.6, Customer may not copy, reproduce, sell, assign, transfer, or sublicense the Licensed Software for any purpose without the prior written consent of Philips. Customer shall reproduce Philips' copyright notice or other identifying legends on such copies or reproductions. Customer will not (and will not allow any third party to) decompile, disassemble, or otherwise reverse engineer or attempt to reconstruct or discover the product or Licensed Software by any means whatsoever.

   1.3 The License shall not affect the exclusive ownership by Philips of the Licensed Software or of any trademarks, copyrights, patents, trade secrets, or other intellectual property rights of Philips (or any of Philips' suppliers) relating to the Licensed Software.

   1.4 Customer agrees that only authorized officers, employees, and agents of Customer will use the Licensed Software or have access to the Licensed Software (or to any part thereof), and that none of Customer's officers, employees, or agents will disclose the Licensed Software, or any portion thereof, or permit the Licensed Software, or any portion thereof, to be used by any person or entity other than those entities identified on the quotation. Customer acknowledges that certain of Philips' rights may be derived from license agreements with third parties, and Customer agrees to preserve the confidentiality of information provided by Philips under such third-party license agreements.

   1.5 The Licensed Software shall be used only on the product(s) referenced in the quotation.

   1.6 Customer may transfer the Licensed Software in connection with sale of the product to a healthcare provider who accepts all of the terms and conditions of this License; provided that Customer is not in breach or default of this License, the Terms and Conditions of Sale, or any payment obligation to Philips.

2. **Modifications**

   2.1 If Customer modifies the Licensed Software in any manner, all warranties associated with the Licensed Software and the products shall become null and void. Customer installation of Philips issued patches or updates shall not be deemed to be modification. If Customer or any of its officers, employees, or agents should devise any revisions, enhancements, additions, modifications, or improvements in the Licensed Software, Customer shall disclose them to Philips, and Philips shall have a non-exclusive royalty-free license

to use and to sub-license them.

   2.2 The Licensed Software is licensed to Customer on the basis that (a) Customer shall maintain the configuration of the products as they were originally designed and manufactured; and, (b) the product includes only those subsystems and components certified by Philips. The Licensed Software may not perform as intended on systems modified by other than Philips or its authorized agents, or on systems which include subsystems or components not certified by Philips. Philips does not assume any responsibility or liability with respect to unauthorized modification or substitution of subsystems or components.

205.    A customer who sells or transfers a Philips ultrasound system to a third party sells the system with these terms and conditions, and the purchaser agrees to abide by these same terms and conditions.  *See* § 1.6.

206.    The Agreements are publically available on Philips' website at *https://www.usa.philips.com/healthcare/about/terms-conditions*, which is available to anyone over the internet.  On information and belief, Defendants are aware of the Agreements and third

- 46 -

party purchasers' agreement to be bound by these same terms, including because they are publicly available on Philips website. Further, it is well known within the medical device service industry that OEM software is proprietary and protected by access controls and security measures that include limited access and prohibitions against modifications and unauthorized access of proprietary information.

207.     On information and belief, Defendants' customers purchased Philips ultrasound systems either from Philips or from third parties and agreed to be bound by the Agreements.

208.     Avante and GMI's sale of 24-hour access keys to its customers for use of Philips ultrasound systems, as described in paragraphs 53-63 above, modifies the software on Philips ultrasound systems and causes the software licensee to breach its agreement with Philips, including without limitation by: (i) using the software for purposes other than the operation of the product; (ii) allowing unauthorized persons to use of have access to the software; (iii) modifying the software without Philips permission or authorization; (iv) altering the configuration of the system from its originally designed and manufactured configuration; and (v) using and installing components that have not been certified by Philips.

209.     Avante and GMI provide and use the 24-hour access keys under the false pretense that the use of 24-hour access keys was legal and/or authorized, for the sole purpose of causing their customers to breach the Agreements in order to obtain authorized access to Philips proprietary, confidential and trade secret information for a profit.

210.     Philips alleges on information and belief that Avante and GMI provide 24-hour keys and/or used 24-hour access keys on the Philips ultrasound systems at St. Peters Hospital and Beaumont Dearborn Hospital, causing both St. Peters Hospital and Beaumont Dearborn Hospital to violate the Agreements in at least the manners described above.

211.     On information and belief, Avante and GMI have engaged and continue to engage in similar conduct at their other customer locations, causing their customers to breach the Agreements in at least the manners described above.

212.     Avante and GMI have acted with malice to injure Philips by causing and inducing breaches of the Agreements in order to make a profit and compete against Philips and to develop and use hacking tools, including the counterfeit key generator, to access, obtain and use Philips proprietary, confidential and trade secret information in direct competition with Philips and to profit from the unauthorized access and use of Philips proprietary, confidential and trade secret information in their service, repair and maintenance business.

213.     Avante and GMI's sale and distribution of the 24 hour access keys is unlawful in violation of at least the DMCA, the CFAA and the copyright laws and Avante and GMI have therefore tortiously interfered with Philips' contractual relations.

214.     Avante and GMI's conduct is ongoing, and it has caused, and will continue to cause Philips repeated and irreparable injury and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

215.     Philips has been and will continue to be damaged by the conduct of Defendants in an amount not presently known with certainty, but that will be proven at trial.

### Count VIII: Civil Conspiracy to Tortiously Interfere With Contractual Relations (Jordan Industries)

216.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count VIII.

217.     On information and belief Jordan Industries has engaged in a conspiracy with GMI and Avante to tortiously interfere with contractual relations as described in the preceding Count VII.

218.     On information and belief Jordan Industries agreement to and participation in a conspiracy with GMI and Avante to tortiously interfere with contractual relations as described in the preceding Count VII was intended to generate a profit for Jordan Industries by engaging in a conspiracy to use the 24-hour access keys and other hacking tools to cause Avante and GMI customers to breach the Agreements with Philips, including without limitation by: (i) using the software for purposes other than the operation of the product; (ii) allowing unauthorized persons to use of have access to the software; (iii) modifying the software without Philips permission or authorization; (iv) altering the configuration of the system from its originally designed and manufactured configuration; and (v) using and installing components that have not been certified by Philips.

219.     On information and belief, Jordan Industries has knowledge of the unlawful methods and hacking tools used by Avante and GMI to tortiously interfere with the Agreements, including because Jordan Industries profits from the sale of the 24-hour keys, which on information and belief are reflected in the financial books and records kept by Avante and GMI and provided to Jordan Industries.

220.     Defendants conduct and conspiracy to tortiously interfere with Philips contracts is ongoing, and it has caused, and will continue to cause Philips repeated and irreparable injury including modifications to Philips ultrasound system to enable unreleased, non-FDA approved options and features, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

221.     Philips has been and will continue to be damaged by the conduct of Defendants in an amount not presently known with certainty, but that will be proven at trial.

## Count IX: Unfair Competition
### (All Defendants)

222.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count IX.

223.     Philips ability to attract and retain customers for repair and maintenance of its products depending on the continued security and integrity, and the proprietary features of Philips ultrasound systems and Philips' proprietary software.

224.     When entering into contracts with hospitals and health care providers, or other third party service providers, for the repair and maintenance of Philips ultrasound systems, Defendants, by relying on and profiting from their improper and unauthorized access of Philips' proprietary software, trade secrets and Philips CSIP, misrepresent their rights to access/use such proprietary and trade secret information and therefore, their expertise and capabilities to service Philips ultrasound systems. Through such conduct, Defendants have gained an improper competitive advantage over Philips that, *inter alia*, caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

225.     Relatedly, Defendants' actions have provided Defendants with competitive advantages with respect to the services that Defendants are able to offer and the pricing associated with those services, including the use of 24-hour access keys to induce GMI and Avante customers to bring their Agreements with Philips and to make unauthorized use of Philips proprietary software. These are advantages that Defendants would not have had but for Defendants' improper conduct in accessing and using Philips proprietary software beyond the degree authorized.

226.     As such, Defendants have engaged in unfair competition. As a result of Defendants' unfair competition, Philips has suffered damages in an amount to be proven at trial.

## Count X:  Permanent Injunction

## (All Defendants)

227.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Count X.

228.     In addition to monetary damages and other relief sought via this Complaint consistent with the foregoing Counts, Plaintiffs hereby petition the Court for entry of a Permanent Injunction, prohibiting Defendants—including any and all employees of Avante, GMI or others within Avante and/or GMI's control—from engaging in, participating in, or assisting with any and all unauthorized access to Philips ultrasound systems, including Philips proprietary software, Philips CSIP and trade secrets and any and all access and use of such Philips proprietary software, Philips CSIP and trade secrets that exceeds Defendants and/or the customer licensed authorizations or that otherwise makes unauthorized use of Philips proprietary software, Philips CSIP and trade secrets and such other injunctive relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court enter judgment in their favor and against Defendants as follows:

1.     Judgment be entered that

    a.   Defendants have committed actions of circumventing a technological measure that effectively controls access to Philips' works protected under Title 17 in violation of the DCMA, 17 U.S.C. § 1201(a)(1);

    b.   Defendants have committed actions of trafficking in a technology, device, product, service, component, or part thereof in violation of the DCMA, 17 U.S.C. § 1201(a)(2);

c.  Defendants have falsified and provided or distributed falsified copyright management information in violation of the DMCA, 17 U.S.C. § 1202;

d.  GMI and Avante have committed acts of trade secret misappropriation in violation of the DTSA, 18 U.S.C. § 1836, *et. seq.*;

e.  GMI and Avante have violated the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, *et seq*.;

f.  Defendants have engaged in copyright infringement in violation of 17 U.S.C. §§ 100, 501, *et. seq.*;

g.  GMI and Avante have committed acts in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a); and

h.  Defendants have tortiously interfered with Philips' contractual relations.

2.  Judgment be entered permanently enjoining Defendants and each of their officers, members, employees, owners managers, agents, attorneys, successors, servants, subsidiaries, related entities, licensees, and assigns, and all persons acting in concert with any of the foregoing, from:

a.  circumventing any Philips access control;

b.  using, possessing, or distributing any Philips proprietary material or trade secrets;

c.  modifying any Philips copyright management information;

d.  infringing, directly or secondarily, Philips copyright;

e.  accessing without authorization, or in excess of authorization, the proprietary software within Philips ultrasound systems; and

f.  interfering with or causing customers to breach the terms and conditions of use and software license agreement with Philips.

3.     Order an accounting of all Philips' trade secrets or proprietary material in Defendants' possession and that all such trade secret or proprietary material be returned to Philips;

4.     Defendants be held liable and ordered to account for and pay to Plaintiffs,

    a.  all gains, benefits, and advantages derived from Defendants' wrongful use, misappropriation, and infringement of Plaintiffs' trade secrets and copyrights;

    b.  all losses and damages, including lost profits and costs for corrective advertising, suffered by the Philips as a result of Defendants' unfair competitive practices;

    c.  award monetary damages to Philips, including but not limited to compensatory damages and statutory, enhanced, treble and punitive damages, to the extent recoverable by any applicable law;

    d.  Philips' reasonable attorneys' fees and costs pursuant to 765 ILCS § 1065/5, and 17 U.S.C. § 505;

    e.  exemplary damages pursuant to 765 ILCS § 1065/4(b);

    f.  exemplary and punitive damages for Defendants' willful, wanton and reckless conduct; and

    g.  Judgment granting Plaintiffs damages and such other relief as this Court deems just and proper.

DATED: July 8, 2021        By: James T. Hultquist
        James T. Hultquist (6204320)
        REED SMITH LLP
        10 South Wacker Drive, 40th Floor
        Chicago, Illinois 60606
        Tel:    (312) 207-1000
        Fax:    (312) 207-6400
        Email: jhultquist@reedsmith.com

Johnathan I. Detrixhe
CA Bar No. 258946 (*pro hac vice motion to be filed*)
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Tel:  (415) 543-8700
Email: jdetrixhe@reedsmith.com

Carla M. Wirtschafter
CA Bar No. 292142 (*pro hac vice motion to be filed*)
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Tel:    (310) 734-5200
Fax:    (310) 734-5299
Email: cwirtschafter@reedsmith.com

*Attorney for Plaintiffs*
*Koninklijke Philips N.V., Philips North America LLC,*
*and Philips India Ltd.*

## JURY DEMAND

Philips hereby requests a jury trial on all issues and claims contained herein that are

eligible for trial by jury.

DATED: July 8, 2021                    By: /s/ James T. Hultquist
                                       James T. Hultquist (6204320)
                                       REED SMITH LLP
                                       10 South Wacker Drive, 40th Floor
                                       Chicago, Illinois 60606
                                       Tel:    (312) 207-1000
                                       Fax:    (312) 207-6400
                                       Email: jhultquist@reedsmith.com

                                       Johnathan I. Detrixhe
                                       CA Bar No. 258946 (*pro hac vice motion to be filed*)
                                       101 Second Street, Suite 1800
                                       San Francisco, CA 94105-3659
                                       Tel:  (415) 543-8700
                                       Email: jdetrixhe@reedsmith.com

                                       Carla M. Wirtschafter
                                       CA Bar No. 292142 (*pro hac vice motion to be filed*)
                                       REED SMITH LLP

1901 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Tel:     (310) 734-5200
Fax:     (310) 734-5299
Email: cwirtschafter@reedsmith.com

*Attorney for Plaintiffs*
*Koninklijke Philips N.V., Philips North America LLC,*
*and Philips India Ltd.*