IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Philips North America LLC, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 21-cv-3615 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| Global Medical Imaging, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER REGARDING
DOCUMENTS OBTAINED BY PHILIPS FROM AHS

Before the Court is a dispute about what should be done with a vast quantity of purportedly privileged documents that were not obtained through formal discovery and that will never be part of this case. As that framing suggests, this Court concludes that it lacks jurisdiction to make any further orders with respect to these documents, and it withdraws any order limiting Philips' access to these materials.

I.  Background

This motion relates to a set of more than 400,000 documents obtained by Philips from AHS[1] (the "AHS Documents"). Philips asserts that AHS obtained these documents when "AHS acquired the business operations of Global Imaging, LLC ('GMI') and its sister companies through bankruptcy. That acquisition included business records as well as inventory, which included adulterated medical imaging devices." (Decl. of C. Wirtschafter Dkt. 374-1, ¶ 2.)

Philips' briefing and supporting declaration do not identify the bankruptcy court case name or caption, the docket entry, or the specific order that is the source of its

---

[1] Philips' briefing refers to the entity that provided it the disputed documents as "AHS," without a specific identification of the entity's formal name. The Court suspects that this entity is AHS Acquisition Holdings, LLC, an entity whose relevance is discussed below, but Philips' imprecise briefing leaves open the possibility that the documents came to Philips from a different AHS affiliate that received the documents from AHS Acquisition Holdings, LLC.

representation regarding the method by which AHS acquired GMI's business records. Philips did, however, attach the Second Amended and Restated Asset Purchase Agreement Dated as of December 9, 2024 By and Among Jordan Health Products I, Inc. and Its Affiliates Named Herein, As Sellers, and AHS Acquisition Holdings, LLC As Purchaser (the "AHS Asset Purchase Agreement") as the agreement by which AHS obtained the AHS Documents. The AHS Asset Purchase Agreement appears as Exhibit A to Dkt. 350 in the bankruptcy court action *In re Jordan Health Products I, Inc.*, 24-12271-TMH (Bankr. D. Del.) (the "Jordan Health Bankruptcy")[2].

Docket Entry 305 is titled Order (A) Authorizing (I) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (II) the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement and Related Documents; and (III) The Debtors to Assume and Assign Certain Contracts and Unexpired Leases; (B) Granting a Waiver of the Stay Periods Under Bankruptcy Rules 6004(h) and 6006(d); and (C) Granting Related Relief. (Bankr. Dkt. 305) (the "Jordan Health Asset Sale Order.")

The Court will not attempt to summarize the details of the Jordan Health Asset Sale Order. As pertinent here, the Jordan Health Asset Sale Order authorized the sale of debtor assets as set forth in the AHS Asset Purchase Agreement (Bankr. Dkt. 305-1; Dkt. 371-4 in this case). Absent this blessing by the Bankruptcy Court, the Jordan Health Debtors would not have been permitted to sell, and AHS would not have been permitted to acquire, debtor assets without running afoul of the automatic bankruptcy stay.

The AHS Asset Purchase Agreement specified which assets would be transferred from the Jordan Health Debtors to AHS, all subject to Bankruptcy Court approval. Section 1.1 of the agreement identifies a list of "the Acquired Assets." (Dkt 371-4, pp. 2-3). Section 1.2 lists "Excluded Assets." Among these excluded assets are "Sellers' attorney-client and work-product privileges, provided that Sellers shall enter into a joint privilege agreement with the Purchaser (the 'Common Interest Agreement') in respect to material covered by the attorney-client or work produce privilege pertaining to Sellers' litigation and disputes with [Philips])." (*Id.* at p. 4.)

---

[2] Co-Defendant GMI's bankruptcy is docketed in the associated case *In re Global Imaging, LLC*, 24-12272-TMH (Bankr. D. Del.). Together, GMI and Jordan Health are referred to as the "Jordan Health Debtors."

2

The Common Interest Agreement memorializes "certain understandings reached with regard to the Parties' common legal interests in matters related to [Jordan Health Debtors'] and [AHS]'s litigation or disputes with . . . Philips . . . ." (Dke 371-5, p. 1.) This agreement provides that all materials "that would otherwise be protected from disclosures to third parties and that are exchanged between or among the Parties . . . in connection with the Actions . . . will remain confidential and protected from disclosure to any third party by the Parties' attorney-client privileges, the Parties' Representatives' attorney work product protections, and any other applicable privileges and protections." (*Id.*) The Common Interest Agreement also provides that common interest information "will not be disclosed by the recipient to any third party without the written consent of the Party that in the first instance made such Common Interest Information available to another Party pursuant to this agreement . . . ." (*Id.* at 2.)

Philips has represented to this Court that the AHS Documents were Jordan Health Debtor documents transferred to AHS pursuant to the AHS Asset Purchase Agreement. From there, AHS transferred the AHS Documents to Philips pursuant to a Cooperation Agreement executed on April 25, 2025. (Dkt. 374-2, Declaration at p. 2.) Philips did not provide a copy of the Cooperation Agreement to the Court or to Jordan Industries. Philips represented that AHS did not consent to sharing the Cooperation Agreement without significant redactions "because the majority of the agreement has nothing to do with the documents AHS provided to Philips." (Dkt. 370, n.1.)

On April 28, 2025, the final day of fact discovery in this case, Philips produced more than 23,000 documents (nearly 250,000 pages) from the AHS Documents to Jordan Industries (the "AHS Document Production"). Philips represented that more documents would be provided to Philips from AHS, and they intended to include those documents in the production set as well. Philips represents that to date, it has received more than 400,000 AHS Documents. (Dkt. 374-2, Declaration at p. 2.)

On May 12, 2025, Jordan Industries moved to strike the AHS Documents (Dkt. 364, pp. 6-7.) In that motion, Jordan Industries asserted, *inter alia*, that the AHS Document Production "includes indisputably privileged documents." (*Id.* at 6.) As further developed in later briefing, Jordan Industries represents that more than 1300 documents "contained hits for Dentons," the firm that presently represents Jordan Industries and, as of the dates in the documents in the AHS Document Production, also represented Jordan Health and GMI. (Dkt. 375-1, pp. 3, 5.) Jordan Industries further asserted that during the period of shared representation, these affiliates shared a common legal interest. (*Id.* at 4.) Accordingly, Jordan Industries argued, the AHS

3

Document Production improperly included Jordan Industries' own privileged materials without its consent or waiver.

On May 14, 2025, the Court held that the AHS Document Production on the last day of discovery was untimely, and it struck these documents from the set of production documents that could be relied upon by either party, absent agreement of the parties. (Dkt 365 (the "Exclusion Order").) These documents had long been available, either from the debtors directly (assuming the requesting party obtained stay relief from the bankruptcy court) or from AHS by subpoena following the Jordan Health Asset Sale Order on December 10, 2024. Accordingly, in its discretion, the Court concluded that there was no good cause to permit Philips rely on this enormous volume of materials produced on the last day of discovery (or, as anticipated, later). Concluding that these materials were not going to be part of the case, the Court determined that it did not need to rule whether the AHS Document Production, or the AHS Documents more generally, included privileged materials.

This brings us to the question of what should happen to these excluded AHS Documents. Jordan Industries argues that Philips should either destroy all of the AHS Documents or allow Dentons to review and claw back its privileged materials, at Philips' expense.

Philips argues that no documents transferred by AHS could include privileged materials because, by the terms of the AHS Asset Purchase Agreement, AHS did not obtain privileged materials from the debtors. More fundamentally, Philips argues, this Court does not have jurisdiction to issue orders regarding excluded materials obtained by Philips from AHS pursuant to a separate commercial relationship between AHS and Philips.

II. Analysis

    A. Philips Did Not Act Improperly By Obtaining The AHS Materials Through Informal Fact-Gathering Rather Than By Subpoena.

There is no dispute that Philips did not obtain the AHS Materials through a Rule 45 subpoena or other formal discovery process. Instead, Philips received these documents through consensual bargaining between AHS and Philips. Jordan International asserts that such informal factfinding is an improper "end run" around the rules governing discovery. In Jordan International's view, Philips was required to use Rule 45 to obtain materials from third party AHS. The Court rejects this remarkable proposition.

4

The Rules of Civil Procedure provide invaluable tools to assist parties in obtaining the materials necessary for trial preparation. Indeed, America's muscular discovery system is, in many respects, the envy of the world. But these tools exist only to give the requesting party the ability to obtain materials they might not otherwise have access to through voluntary cooperation. If a party obtains materials through voluntary cooperation, it is entitled to use those materials, so long as the party otherwise cooperates with discovery requests that might call for production of those informally-obtained documents.

It was in that spirit that Philips produced the AHS Document Production to Jordan International. Jordan International offers cases citing the importance of Rule 45, but it cites to no caselaw stating that it is improper for a party to obtain materials through voluntary cooperation.

> B. The Court Lacks Grounds to Evaluate Philips' Possession of the AHS Documents.

Apart from its argument regarding informal fact-gathering, Jordan International asserts that Philips wrongfully possesses privileged documents that are to be found in the AHS Documents (the "Potentially Privileged AHS Documents"). For the Court to evaluate that question, it would inevitably be called upon to evaluate whether the Potentially Privileged AHS Documents were in fact approved for sale by the Jordan Health Bankruptcy Court's Assets Sale Order, which in turn would require interpretation of both the AHS Asset Purchase Agreement and the Common Interest Agreement incorporated therein. The only actors in that transfer, the Jordan Health Debtors and AHS, are not before this Court: the Jordan Health Debtors are the beneficiaries of the automatic stay and AHS is a non-party to this action.

The scope of the Jordan Health Bankruptcy Court's order is a topic best addressed by the Bankruptcy Court, not this Court. And that's not just this Court's opinion; AHS and the Jordan Health Debtors reached that same conclusion when they drafted Section 10.13 of the AHS Asset Purchase Agreement:

> Each of the Parties irrevocably agrees that any Action that may be based upon, arising out of, or related to this Agreement or the negotiation, execution or performance of this Agreement and the transactions contemplated hereby brought by any other Party or its successors or assigns will be brought and determined only in (a) the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may

> be validly taken or (b) in the event the Bankruptcy Case is closed, or if the Bankruptcy Court is unwilling or unable to hear such Action, in the Delaware Chancery Court and any state court sitting in the State of Delaware to which an appeal from the Delaware Chancery Court may be validly taken (or, if the Delaware Chancery Court declines to accept jurisdiction over a particular matter, any state or federal court within the state of Delaware) ((a) and (b), the "Chosen Courts"), and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the Chosen Courts for itself and with respect to its property, generally and unconditionally, with regard to any such Action arising out of or relating to this Agreement and the transactions contemplated hereby. Each of the Parties agrees not to commence any Action relating thereto except in the Chosen Courts, other than Actions in any court of competent jurisdiction to enforce any judgment, decree or award rendered by any Chosen Court, and no Party will file a motion to dismiss any Action filed in a Chosen Court on any jurisdictional or venue-related grounds, including the doctrine of forum non-conveniens.

(AHS Asset Purchase Agreement SECTION 10.13).

Jordan International might assert that the forum selection clause would not apply because its dispute with Philips involves two parties who were not part of the original AHS Asset Sale Agreement, but that argument only highlights the problem. This Court is, in sum, being asked to opine on a contractual agreement between parties who are not before the Court.

There's more. If the Court were to conclude that the Potentially Privileged AHS Documents were properly in the AHS' hands, the Court would next be called upon to evaluate whether AHS was permitted to transfer those Potentially Privileged AHS Materials to Philips. As with the previous issue, the AHS Asset Purchase Agreement and Common Interest Agreement would be the starting point for this analysis. In addition, the Court would be required to evaluate the Cooperation Agreement, the contract by which AHS provided these materials to Philips. That document has never been produced, and this Court has no grounds on which to evaluate how that Agreement might influence the outcome of this dispute.

But even if the Court could get past these problems, it would need to determine whether some or all of the Potentially Privileged AHS Documents were, in fact, ever privileged, and if so, whether they still retained that character by the time they made

6

their way to Philips. That inquiry would require information regarding the nature of specific documents, as well as information regarding the nature and scope of the purported common interest among Jordan Internation and two Jordan Health Debtors who cannot participate in the conversation due to the automatic stay.

Complicating all of these problems even further is that of the 400,000-plus AHS Documents, less than 6% were ever produced in this litigation. Once the Court ruled that the AHS Documents would be excluded from use in this case, Philips did not complete production of the full set of AHS Documents. In sum, then, the Court would be evaluating transactions involving non-parties and stayed debtors, applying contracts that are either missing or bound by forum selections clauses that do not permit review in this Court, and making calls as to privilege on documents that have never been and will never be part of this case. The Court declines to undertake that evaluation.

The Court recognizes that the 23,000 documents in the AHS Document Production were produced by Philips before the Court excluded their use. Jordan International argues that Rule 26(b)(5)(B) provides grounds for review in this forum. This Section provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).

This Rule cannot bear the weight of Jordan Industries' argument. First, by its terms, it speaks of a disclosing party and a receiving party. Here, with respect to the AHS Document Production, the disclosing (*i.e.*, producing) party was Philips and the receiving party was Jordan Industries. Using those party names, it becomes clear that this Rule is intended to prevent a receiving party from obtaining another party's documents. It is not intended to prevent a receiving party from seeing its own privileged materials.

Jordan International argues that Rule 26(b)(5)(B) also applies to documents obtained from a third party. Even if these cases were binding on this Court (or were even decided by a district in our Circuit), the cases cited by Jordan International, have nothing to do with the situation presented here. *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 442-44 (D. Md. 2012) offered no analysis of the issue present in this case. Instead, *Maxtena* focused on whether inadvertent production (pursuant to subpoena) had operated to waive privilege pursuant to Fed. R. Civ. P. 45(d)(2)(B), and noted that Rule 26(b)(3)(B) might be applicable to rectify the inadvertent disclosure. *Thompson v. Intermodal Cartage*, 2025 WL 299971 *2 (S.D. Miss. Jan. 24, 2025) is even less relevant. The only mention of Rule 26(b)(5) is for the unremarkable (and irrelevant here) point that a partying withholding otherwise discoverable materials on the basis of privilege must provide details about the claim to the requesting party. Jordan Industries has provided no authority applying Rule 26(b)(5)(B) as advanced here. In this Court's view, this Rule is not a fit for situation at bar.

Jordan International references the Court's "'inherent authority' over the integrity of the judicial proceedings." The judicial proceedings before this Court are this dispute and this dispute alone. While the Court has sympathy to Jordan Industries' frustrations, this venue is not the place for it to find relief.

Accordingly, the Court rescinds any interim order relating to Philips' review or use of the AHS Documents, aside from its Order that the AHS Materials may not be used in this case. It is important to note what this ruling is not saying: the Court is not opining on any question of privilege relating to the Potentially Privileged AHS Documents. There may be another venue, involving some or all of the parties referenced above, where such a dispute maybe be brought. This Court only holds that the *Philips North America LLC v. Global Medical Imaging, LLC,* Case No. 21-cv-3615, is not that place.

SO ORDERED.

ENTER:

*/s/ Laura K. McNally*

**LAURA K. MCNALLY**

**United States Magistrate Judge**

**DATED: June 25, 2025**